IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW NOLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| LINDA THOMAS, Warden, | ) | |
| JANET PURDUE, Assistant Warden, | ) | |
| JAMES HENRY, Assistant Warden, | ) | |
| ANTONIO SALAS, Captain, | ) | |
| WILLIAM SCHNAKE, Unit Manager, | ) | |
| MICHAEL REUSCH, Lieutenant, | ) | |
| WANDA COLLINS, Lieutenant, | ) | TRIAL BY JURY DEMANDED |
| KIM SHIVERS, Correctional Officer, | ) | |
| ROBERT JOHNSON, BOP Staff, | ) | |
| MICHAEL NALLEY, BOP Regional Director,) | | |
| | ) | |
| Defendants.) | | |

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

NOW COMES Plaintiff MATTHEW NOLAN, by his attorneys John M. Beal and Andrea E. Gambino, and for his complaint against defendants LINDA THOMAS, JANET PURDUE, JAMES HENRY, ANTONIO SALAS, WILLIAM SCHNAKE, MICHAEL REUSCH, WANDA COLLINS, KIM SHIVERS, ROBERT JOHNSON, and MICHAEL NALLEY, alleges as follows:

JURISDICTION

1. This action is brought for violation of the laws of the United States and the State of Illinois, and this Court has jurisdiction under Title 28, United States Code, Sections 1331 and 1343(a).

VENUE

2.      Venue properly lies in the Northern District of Illinois in that the events giving rise to the claims herein occurred in Chicago, Cook County, Illinois.

PARTIES

3.      Defendant LINDA THOMAS, at all times relevant hereto was the Warden of the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

4.      Defendant JANET PURDUE, at all times relevant hereto was an Assistant Warden of the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.  On information and belief, she received and exercised delegations of authority from Warden THOMAS.

5.      Defendant JAMES HENRY, at all times relevant hereto was an Assistant Warden of the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.  On information and belief, he received and exercised delegations of authority from Warden THOMAS.

6.      Defendant ANTONIO SALAS, at all times relevant hereto was a Captain at the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government

7.    Defendant WILLIAM SCHNAKE, at all times relevant hereto was the Unit Manager at the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

8.    Defendant MICHAEL REUSCH, at all times relevant hereto was a Lieutenant at the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

9.    Defendant WANDA COLLINS, at all times relevant hereto was an Officer at the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

10.    Defendant KIM SHIVERS, at all times relevant hereto was an Officer at Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

11.    Defendant ROBERT JOHNSON, at all times relevant hereto was an Officer at the Chicago Metropolitan Correctional Center of the Federal bureau of Prisons, an agency of the United States government.

12.    Defendant MICHAEL NALLEY, at all times relevant hereto was the Regional Director of the Federal bureau of Prisons, an agency of the United States government.

13.    Plaintiff MATTHEW NOLAN is, and at all times relevant hereto was, a citizen of the United States and a resident of Cook County, Illinois.

UNDERLYING FACTS

14.    On or about February 26, 2009, plaintiff Nolan arrived at the Chicago Metropolitan Center ("MCC"), held in administrative detention pending the resolution of an extradition warrant issued by the government of Costa Rica.  He remained continuously in administrative detention in the Chicago Metropolitan Correctional Center until August 6, 2010.

15.    The petition for extradition alleged three charges against plaintiff Nolan: (1) aggravated kidnapping, (2) murder, (3) use of a false document.  On August 31, 2009, Magistrate Judge Michael Mason entered an Order granting in part and denying in part the petition for extradition.  The Court found no probable cause to support the charges of aggravated kidnapping and murder. The Court granted the request for extradition based on the third charge, use of a false document.  Subsequently, on August 5, 2010, the government moved to dismiss the remaining extradition request.  The Court granted the government's motion and ordered that Mr. Nolan be released.  He was released from custody on August 6, 2010.

16.    While Mr. Nolan was a detained on the extradition warrant, on October 20, 2009, an indictment issued charging Mr. Nolan with four counts of possessing a prohibited object while in federal custody and one count of obstruction of justice.  On November 20, 2009, a detention hearing was held before the United States District Court for the Northern District of Illinois.  Mr.

Nolan was denied bail. From October 20, 2009, until July 7, 2010, Mr. Nolan was a pre-trial detainee. The Warden continued to require that Mr. Nolan remain in administrative detention at the Metropolitan Correctional Center.

17.     Although the extradition request ultimately was dismissed by the United States District Court on August 5, 2010, an extradition warrant remains lodged and active with Interpol.

18.     When plaintiff Nolan was arrested pursuant to the petition for extradition and taken into custody on February 26, 2009, plaintiff Nolan was placed in solitary confinement on the 11th floor of the Chicago Metropolitan Correctional Center. While he was in solitary confinement he was kept in a single cell, the door of which was solid except for a small window at approximately eye-level and an opening beneath the window to allow for hand-cuffing and the delivery of a food tray, commonly called a "chuck hole". The cell did not have a window or any access to fresh air or light. Lighting in the cell was controlled by the prison officials. The cell contained a steel bench, a small toilet, and a sink. Mr. Nolan was kept in this cell 23 out of 24 hours per day and denied newspapers, magazines, or any other method of keeping track of time of the day and day of the week.

19.     Mr. Nolan was not permitted to have contact with other inmates. He was not permitted more than occasional access to the telephone or to electronic mail. He also was not permitted to have visits at all from his wife,

children, or any other individuals, with the exception of his lawyer, for the first several months of his confinement. In the first six and one-half months of his confinement he had only one contact visit with his wife. During the entire seventeen month course of solitary confinement he was not permitted regular contact visits with his wife and virtually no contact visits with his children or others who were not legal counsel.

20. During the one hour per day out of the cell, Mr. Nolan was permitted to bathe or to go to another cell, known as the "cage", in order to exercise, but only by himself.

21. Lieutenant COLLINS and Correctional Officer SHIVERS signed the order placing plaintiff Nolan in administrative detention. Warden THOMAS and Regional Director NALLEY signed the denial of plaintiff Nolan's grievances asking to be placed in the general population and to have the three man hold removed. On information and belief, other defendants participated in the imposition on plaintiff Nolan of his conditions of confinement.

22. It is well-established that a person who is subjected to extended solitary confinement can suffer severe psychological harm from the solitary confinement. Specifically, solitary confinement can exacerbate a previously existing mental condition, or cause the onset of a mental illness where none previously existed. Such mental illnesses may well last beyond the end of solitary confinement or may become permanent. Moreover, solitary

confinement for extended periods of time inevitably causes significant psychological pain during the period in which it is imposed.

23. Plaintiff Nolan suffered psychological pain while he was in solitary confinement. The period of solitary confinement exacerbated mental and physical conditions which pre-dated his incarceration. Plaintiff Nolan now suffers from mental conditions diagnosed as a result of the solitary confinement.

24. The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment defines torture as "any act by which sever pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . punishing him for an act he has committed or is suspected of having committed, or intimidating or coercing him . . ., or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of . . . a public official or other person acting in an official capacity." The United States of America signed the Convention, and it was ratified by the United States on October 21, 1994. The convention further provides that "each State Party shall take effective legislative, administrative, judicial or other measures to prevent acts of torture in any territory under its jurisdiction." The solitary confinement of and the consequent infliction of severe psychological pain on plaintiff NOLAN constitutes a violation of the aforesaid Convention Against Torture, to which

the United States is a State Party.

25.     Upon information and belief, Federal Bureau of Prison regulations require the regular monitoring and assessment for psychological harm from the solitary confinement of inmates who are in solitary confinement in a Bureau of Prisons facility.

26.     Upon information and belief, plaintiff Nolan was not monitored and evaluated at all, much less regularly, for the psychological effects of solitary confinement.

27.     As a direct and proximate result of the 17 months of solitary confinement, plaintiff Nolan suffered severe psychological harm.

28.     As a direct result of being in solitary confinement, plaintiff Nolan also received inadequate medical care.  His requests for medical attention were ignored – sometimes for weeks at a time.  The treating physician often examined him through the "chuck hole" in the door of his cell, and treatment was denied to him without explanation.  All of the medical care rendered to Mr. Nolan in the Metropolitan Correctional Center was performed on the 11th floor, and none was provided on the medical floor, which housed the medical treatment facilities and supplies for the Metropolitan Correctional Center.  As a direct result of the aforesaid inadequate medical care, which was a direct result of the solitary confinement, as well as from the knowing and intentional deprivation of adequate medical care for plaintiff Nolan and other MCC inmates

by Warden THOMAS and other defendants. Plaintiff Nolan suffered the following severe physical and mental harms:

    a.      a staph infection and obstruction in Mr. Nolan's right ear;

    b.      regrowth of an actinic keratosis lesion in the middle of Mr. Nolan's chest and related post-surgical complications;

    c.      skin lesions on his right arm and a malignant neo of skin of upper limb, including shoulder;

    d.      several skin disorders, including rashes on Mr. Nolan's legs and genital region, that developed because Dr. Harvey ignored the institutional environment and conditions that both caused and exacerbated these conditions;

    e.      a swollen knee, leg abrasion, and bleeding ankles;

    f.      anxiety, depression, attention deficit disorder, and post-traumatic stress disorder; and,

    g.      the failure of Dr. Paul Harvey, any defendant, or any other medical, or psychological treatment provider to recognize, treat, and otherwise intervene with respect to the psychological and psychiatric effects of extended solitary confinement.

29.    The solitary confinement further resulted in interference with Plaintiff Nolan's right to receive mail. Plaintiff Nolan did not receive mail that was sent to him, received mail after unexplained delays, and received mail that

had been tampered with.

30. In the first six and one-half months of his placement in solitary confinement he had only one contact visit with his wife and no contact visits with his children. His placement in solitary confinement caused unjustified and severe restrictions on his ability to see, touch, and share normal human affection and interaction with his wife and children. From September 18, 2009, until his release, Mr. Nolan was only permitted one contact visit per week with his wife, and he was not permitted regular contact visits with his children.

31. Plaintiff Nolan was not permitted to communicate with his father before he died, even after officials had received confirmation from the treating hospital that Mr. Nolan's father was, indeed, on his deathbed.

32. Plaintiff Nolan's ability to bathe, exercise, go to the law library, or otherwise move about within the institution was severely limited by the requirement that three officers be involved in any movement, a condition referred to as a "three-man hold". Plaintiff Nolan was not consistently allowed daily recreation and exercise and was never permitted to have any outdoor recreation.

33. Plaintiff Nolan's access to commissary was restricted without explanation.

34. Plaintiff Nolan was not permitted to wear a plain platinum wedding

band.

35.     Plaintiff Nolan's placement in solitary confinement interfered with his access to the courts, a law library, and regular telephone communication with his legal counsel and family.

36.     Defendant ROBERT J0HNSON violated Plaintiff Nolan's right to be free from sexual and other forms of harassment by making inappropriate sexual comments to Plaintiff, watching Plaintiff undress, and tampering with Plaintiff's mail.

CIVIL RIGHTS VIOLATIONS

37.     In subjecting plaintiff Nolan to seventeen months of solitary confinement, without on-going assessment of the effects of the solitary confinement on plaintiff Nolan and which resulted in physical and psychological harm to plaintiff Nolan, defendants violated plaintiff Nolan's right to substantive and procedural due process of law under the Fifth Amendment to the Constitution of United States.

38.     The aforesaid solitary confinement further: (1) resulted in interference with plaintiff Nolan's right to receive mail, (2) caused severe restrictions on visitation with his wife and children, (3) deprived Mr. Nolan of his ability to communicate with his dying father, (4) deprived him of his right to wear his wedding band, (5) interfered with his access to adequate medical care; (6) restricted his access to exercise, fresh air, commissary, and opportunities to

bathe; (7) caused him to live for extended periods of time in an area that had not been properly cleaned, where another inmate covered the walls of a neighboring cell with excrement, and where Mr. Nolan was moved to a cell which had not been properly cleaned after the previous occupant had been sent out of the institution with tuberculosis; (8) interfered with his access to the courts, a law library, and regular communication with his legal counsel, and (9) interfered with his right to be free from sexual and other forms of harassment by Defendant ROBERT JOHNSON. All of these additional consequences of the solitary confinement, individually and collectively, caused plaintiff Nolan additional psychological harm and emotional distress.

39. The Chicago Metropolitan Correctional Center was an institution that provided medical and mental health care to its inmates. The Chief Executive Officer of the MCC was Warden Thomas. Acting in deliberate disregard of plaintiff Nolan's entitlement to medical and mental health care, Warden Thomas failed to ensure that Mr. Nolan was provided with competent medical and mental health care. It was widely known that Dr. Paul Harvey did not provide the medical and mental health care that a reasonably well qualified physician would have provided. This was evident from, among other things, the fact that Dr. Harvey regularly over-rode medically correct treatment recommendations by other medical and mental health care personnel who worked under his direction and the fact that there were many complaints about

the medical care and mental health he provided, or failed to provide, from other MCC inmates, their families, and their attorneys. In short, Warden Thomas knowingly violated her duty to ensure that inmates in the MCC, including Mr. NOLAN, received the medical and mental health care that would have been provided by a reasonably well qualified physician. This breach of duty proximately caused the harm to Mr. Nolan set forth above.

40. Mr. Nolan was callously deprived of the right to speak with his father on his death bed. This happened despite specific requests to do so and confirmation of the father's terminal condition. These actions by Warden Thomas and other defendants violated plaintiff's Nolan's right to freedom of association with his family and the denial contravened due process of law. Warden

41. Mr. Nolan was imprisoned in cells that were unclean, offensive and dangerous to his health; and he was severely restricted his access to exercise, fresh air, commissary, and opportunities to bathe. This constituted the imposition on plaintiff conditions of confinement below contemporary standards of decency, violated plaintiff's right to due process of law, and constituted unconstitutional imposition of punishment on a pretrial detainee. Plaintiff Nolan's conditions of confinement were the responsibility of Warden Thomas, Captain Salas, Unit Manager Schnake, and other defendants. As a direct and proximate result of the actions and deliberate indifference of

the defendants, as aforesaid, plaintiff Nolan suffered the harms set forth above.

42.    Plaintiff Nolan has experienced  and continues to experience psychological harm, physical injury, pain and suffering, fright, degradation, anxiety, depression, post-traumatic stress disorder, and emotional distress as a direct and proximate result of the actions of the defendants, as set forth above.

WHEREFORE Plaintiff NOLAN prays that this Court:

A.    Find that Defendants LINDA THOMAS, JANET PURDUE, JAMES HENRY, ANTONIO SALAS, WILLIAM SCHNAKE, MICHAEL REUSCH, WANDA COLLINS, KIM SHIVERS, ROBERT JOHNSON, and MICHAEL NALLEY are guilty of and liable for the deprivation of Plaintiff NOLAN'S right to procedural and substantive due process of law under the Fifth Amendment to the United States Constitution.

B.    Enter a declaratory judgment that decrees that subjecting Plaintiff NOLAN to solitary confinement for seventeen months without regular monitoring and assessment for psychological harm violated Plaintiff NOLAN's rights to substantive and procedural due process under the Fifth Amendment to the United States Constitution, as well as his right to be free from torture under international law and the laws of the United States.

C.    Enter a judgment in Plaintiff NOLAN'S favor and against Defendants LINDA THOMAS, JANET PURDUE, JAMES HENRY, ANTONIO

14

SALAS, WILLIAM SCHNAKE, MICHAEL REUSCH, WANDA COLLINS, KIM

SHIVERS, ROBERT JOHNSON, and MICHAEL NALLEY, and award plaintiff:

     I.     Compensatory damages as shall be proven at trial;

     ii.     Punitive damages as shall be proven at trial;

     iii.     Plaintiff's costs herein; and,

     iv.     Such further relief as the Court deems just and proper.

     Respectfully submitted,

DATE:     March 4, 2011     By:     s/John M. Beal

     s/Andréa E. Gambino
     Attorneys for Plaintiff

John M. Beal
Attorney at Law
53 W. Jackson Blvd., Suite 1615
Chicago, Illinois  60604
(312) 408-2766

Andréa E. Gambino
Attorney at Law
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014